UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALESSANDRA D., <br><br>                   Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>                   Defendant. | Case No.:  20cv1784-KSC <br><br> **ORDER RE THE PARTIES' JOINT MOTION FOR JUDICIAL REVIEW** <br> **[Doc. No. 10]** |

On July 27, 2020, plaintiff Alessandra D. commenced an action pursuant to Title 42, United States Code, Section 405(g), against Andrew M. Saul, the Commissioner of Social Security,[1] seeking review of a final adverse decision of the Commissioner. [Doc. No. 1.]  Currently before the Court is the parties' Joint Motion for Judicial Review of a Final Decision of the Commissioner.  [Doc. No. 10.]  In the Joint Motion, plaintiff seeks a reversal and a remand for an award and calculation of benefits or for a new

---

[1]     According to the parties, Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is automatically substituted in place of Andrew Saul as the defendant in this suit.

1

hearing, because she believes the evidence in the record shows she qualifies for disability benefits. [Doc. No. 10, at p. 15.] Defendant argues that a remand is not appropriate for any reason, because plaintiff failed to meet her burden to show she was disabled as of the date she was last insured for disability benefits under Social Security regulations. [Doc. No. 10, at pp. 15-16.] For the reasons outlined more fully below, the Court finds that plaintiff's request for a reversal and remand must be DENIED. The Court also finds that judgment must be entered in defendant's favor and against plaintiff.

I.     *<u>Background and Procedural History</u>*.

Plaintiff filed an application for Social Security disability insurance benefits on June 15, 2017, alleging she was disabled as of on July 1, 2002. [Doc. No. 7-6, at pp. 2.] At this time, her claimed medical conditions included a C3-C7 cervical fusion; fibromyalgia; chronic pain; carpal tunnel syndrome; bilateral neuroforaminal stenosis at C3-C7 and C7-T1; post anterior cervical discectomy and fusion at C3-C4; and a perineal cyst along the C8 nerve. [Doc. No. 7-6, at p. 8.] Plaintiff indicated in her application for benefits that she stopped working because of her condition on November 1, 2009. [Doc. No. 7-6, at p. 8.] Plaintiff's application for benefits was denied on July 12, 2017. [Doc. No. 7-4, at pp. 3-9.] She then submitted a request for reconsideration on March 19, 2018, which was denied on May 17, 2018. [Doc. No. 7-3, at pp. 2-5.]

On July 11, 2018, plaintiff requested a hearing, and a hearing was then held before an ALJ on October 17, 2019. [Doc. No. 7-4, at pp. 13-14; Doc. No. 7-2, at pp. 25-48.] In a written decision dated December 10, 2019, the ALJ concluded plaintiff is not eligible for disability benefits, because she was not disabled under Social Security regulations at any time from July 1, 2002, her alleged date of onset, through June 30, 2005, the date she was last insured. [Doc. No. 7-2, at pp. 16-20.] Plaintiff then requested review of the ALJ's decision by the Appeals Council, but the Appeals Council concluded in a letter dated July 9, 2020, that there was no basis for changing the ALJ's decision. [Doc. No. 7-2, at pp. 2-4.] Therefore, the ALJ's denial became the final decision of the Commissioner.

On September 11, 2020, plaintiff filed her Complaint in this action seeking review of the ALJ's decision.  [Doc. No. 1.]  Plaintiff then filed a Consent to jurisdiction for all purposes by the undersigned Magistrate Judge.  [Doc. No. 4.]

**II.     Standards of Review.**

The final decision of the Commissioner must be affirmed if it is supported by substantial evidence and if the Commissioner has applied the correct legal standards. *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record. *Id.* If there is evidence in the record to support more than one rational interpretation, the District Court must defer to the Commissioner's decision. *Id.* "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  "In determining whether the Commissioner's findings are supported by substantial evidence, we must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

**III.    The Administrative Record.**

   *A.     Summary of the Administrative Hearing.*

Plaintiff, her husband, and her attorney were present at the hearing, and the ALJ considered testimony by plaintiff and Dr. Lorber, a board-certified orthopedic surgeon. [Doc. No. 7-2, at pp. 27-28, 32.]  At the start of the hearing, the ALJ indicated to Dr. Lorber that the "relevant issue" is whether plaintiff was disabled prior to the time her disability insurance coverage expired on June 30, 2005.  [Doc. No. 7-2, at pp. 27-29.] Plaintiff's attorney indicated he calculated the quarterly credits since plaintiff was 18 years old, and he agreed June 30, 2005 is the date she was last insured.  [Doc. No. 7-2, at p. 29.]  When asked what evidence he wanted Dr. Lorber to consider on the issue of whether plaintiff was disabled prior to her date last insured, plaintiff's attorney referenced (1) a letter from a physician dated May 16, 2017, stating plaintiff has a history

of degenerative joint disease since 2005;[2] and (2) an x-ray of plaintiff's cervical spine dated July 6, 1998. [Doc. No. 7-2, at pp. 29-30.]

In response to questions by the ALJ, plaintiff testified she has been using a wheelchair for several years. The wheelchair was prescribed to her by her primary doctor. [Doc. No. 7-2, at pp. 31-32.]

Dr. Lorber testified he reviewed all exhibits through Exhibit 12F prior to the hearing. [Doc. No. 7-2, at p. 33.] However, he indicated Exhibits 13 through 16, which were apparently posted to plaintiff's claim file after his review of Exhibits 1 through 12, are all from "some number of years subsequent" to the date last insured and would not "add much" to his analysis. [Doc. No. 7-2, at p. 33-34.] Dr. Lorber testified there are no medical records after the date last insured that could be "related back" to show plaintiff had a severe impairment in 2005. He also testified there is insufficient evidence in the Administrative Record to demonstrate plaintiff was disabled prior to her date last insured. [Doc. No. 7-2, at p. 34-35.]

At the hearing, Dr. Lorber inquired as to whether plaintiff had previously filed applications for Social Security benefits. Plaintiff indicated she had previously filed applications for "SSI," which has different criteria for eligibility and does not require work credits. She also indicated documents submitted in connection with these applications would be in the field office in El Cajon. [Doc. No. 7-2, at pp. 35-36.] Therefore, the ALJ advised plaintiff she could request that documents from these prior applications be made a part of the record on the current application. [Doc. No. 7-2, at pp. 36-37.]

Plaintiff's counsel was then given an opportunity to question Dr. Lorber. During this questioning, Dr. Lorber conceded that degenerative disc disease is progressive.

---

[2]   Plaintiff's attorney indicated during the hearing that the letter states plaintiff has a history of degenerative "disc" disease. [Doc. No. 7-2, at p. 29.] The actual letter states that plaintiff has a history degenerative "joint" disease. [Doc. No. 7-7, at p. 73.]

4

However, he said there is not enough information in the Administrative Record for him to make "a proper evaluation" as to plaintiff's medical condition in 2005, and it is unlikely plaintiff's counsel could "sway" his opinion "unless you bring in new information." [Doc. No. 7-2, at pp. 39-41.]  With respect to the May 16, 2017 handwritten letter from E. Manning M.D., Dr. Lorber testified as follows:  "This is not sufficient.  We can't make assumption[s] based upon this report." [Doc. No. 7-2, at p. 44.]  In addition, Dr. Lorber seemed to question the authenticity of the letter, stating:  "[I]t doesn't even have a signature.  It looks like someone printed his name here." [Doc. No. 7-2, at p. 44.]

In response, plaintiff stated she is unable to obtain "old records." [Doc. No. 7-2, at p. 44.]  Plaintiff explained that:  "After 10 years, they don't have those documentation anymore." [Doc. No. 7-2, at p. 44.]  The ALJ then explained that medical experts are sometimes able to "relate back" based on information in later records, and Dr. Lorber would do so if he could, but he is being asked to go back "so many years," that it is just not possible in this case. [Doc. No. 7-2, at pp. 44-45.]  Plaintiff's attorney argued that the medical expert should be able to "extrapolate" from existing medical records that plaintiff had a disabling condition as of her date last insured. [Doc. No. 7-2, at p. 45.]  In response to counsel's argument, the ALJ made an "exception" and allowed plaintiff's counsel ten days to submit "a post-hearing memo." [Doc. No. 7-2, at p. 46.]  The ALJ also agreed to hold onto the file in case "counsel comes up with something." [Doc. No. 7-2, at p. 46.]

### B.     *Summary of the ALJ's Findings.*

The ALJ's opinion states that plaintiff's earnings records show she "acquired sufficient quarters of coverage to remain insured through June 30, 2005 (hereinafter 'the date last insured').  Thus, [plaintiff] must establish disability on or before that date . . . to be entitled to a period of disability and disability insurance benefits." [Doc. No. 7-2, at p. 16.]

To qualify for disability benefits under the SSA, an applicant must show the existence of a prior determinable physical or mental impairment that has lasted or can be expected to last at least 12 months.  42 U.S.C. § 423(d).  The Social Security regulations

establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). In this case, the ALJ found plaintiff had not engaged in substantial gainful activity between July 1, 2002, the alleged onset of her disability, through the date she was last insured, June 30, 2005. [Doc. No. 7-2, at p. 18.]

At step two, the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of Social Security regulations from the date he was last insured. 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). For example, a slight abnormality or combination of slight abnormalities that only have a minimal effect on the applicant's ability to perform basic work activities will not be considered a "severe" impairment. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). "If the ALJ finds that the claimant lacks a medically severe impairment, the ALJ must find the claimant not to be disabled." *Id.* In this case, the ALJ concluded at step two that the record lacks evidence to establish "the existence of a medically determinable impairment through the date last insured." [Doc. No. 7-2, at p. 20.] To reach this conclusion, the ALJ relied on the following evidence in the record:

1. **July 6, 1998 X-Ray**. According to the ALJ, the only objective medical evidence in the record prior to 2005 is an x-ray of plaintiff's "cervical" spine.[3] This x-ray

---

[3] The ALJ's decision indicates the x-ray is of plaintiff's "lumbar" spine. [Doc. No. 7-2, at p. 19.] The x-ray report refers to plaintiff's "cervical" spine. [Doc. No. 7-7, at p. 2.]

only showed "possible" evidence of minimal degenerative disc disease at C5-C6.  [Doc. No. 7-2, at p. 19, citing Ex. 1F; Doc. No. 7-7, at p. 2.]

2. **September 23, 2013 X-Ray**.  This x-ray of plaintiff's lumbar spine indicates there was degenerative spurring from L3 to S1; no vertebral fractures; mild space narrowing at L3-L4, L4-L5, and L5-S I; a five-degree levoscoliosis, which may have been positional; and no soft tissue abnormality.  [Doc. No. 7-2, at p. 19, citing Ex. 5F at p. 7; Doc. No. 7-7, at p. 65.]

3. **March 1, 2017 MRI**.  This MRI of plaintiff's lumbar spine showed multilevel moderate discogenic degenerative changes without evidence of severe canal or foraminal stenosis.  [Doc. No. 7-2, at p. 19, citing Ex. 7F at p. 59); Doc. No. 7-8, at p. 60.]  The notes appended to these MRI results indicate plaintiff "was doing some laundry and then started to have some pain in her lower back."  [Doc. No. 7-8, at p. 60.]  She had "a Toradol shot" with no improvement.  However, she reported she had previously had lower back pain but that it had "gone away with time."  [Doc. No. 7-8, at p. 60.]

4. **May 16, 2017 Physician's Letter**.  This hand-written letter has a printed signature by "E. Manning, M.D."  The letter was authored shortly before plaintiff filed her application for disability benefits on June 15, 2017, and states as follows:  "To Whom It May Concern.  [Plaintiff] has a history of degenerative joint disease since 2005.  She has chronic back pain and has had surgeries for her back.  She is currently disabled."  [Doc. No. 7-2, at p. 20, referring to Ex. 6F; Doc. No. 7-7, at p. 73.]  The ALJ found this letter to be unpersuasive because "it is inconsistent with and unsupported by the objective medical evidence in the record, which indicates that the claimant did not have a disabling impairment prior to the expiration of her date last insured."  [Doc. No. 7-2, at p. 20.]

5. **September 2, 2017 Emergency Department Note**.  The ALJ's decision notes that plaintiff "sought treatment for back pain following what she described as an 'aggressive exercise and gym workout.'"  [Doc. No. 7-2, at p. 19, citing Ex. 7F at 59; Doc. No. 7-14, at p. 15.]  More specifically, this Emergency Department Note states that

plaintiff was requesting medication for pain, because she hurt her left lower back and leg a few days ago during an "aggressive exercise and gym workout." [Doc. No. 7-14, at p. 15.] She was ambulatory and was not using a cane. [Doc. No. 7-14, at p. 15.] Plaintiff was advised that narcotics would not help her pain long term. She was referred to pain management and physical therapy, given a cane, and advised to use heat and ice on affected areas. [Doc. No. 7-14, at p. 19.]

      6.    **Opinions of Reviewing Physicians**. The ALJ's decision states that an independent medical expert (Dr. Lorber) and state agency medical consultants had all reviewed the record and concluded plaintiff did not have a disabling condition prior to the expiration of her date last insured. [Doc. No. 7-2, at pp. 19-20.]

      7.    **Other Medical Records**. The ALJ noted that the Administrative Record primarily includes medical records "from well after the date last insured." However, the ALJ said these records did not show the presence of a disabling impairment prior to the date last insured.[4] [Doc. No. 7-2, at p. 20.]

### C. *Medical Records from 2010 through 2017.*

The Administrative Record includes a fairly large number of medical records from 2010 through 2017, and a few highlights of these records are summarized here in chronological order. First, plaintiff was injured at work on January 28, 2010, "when she was lifting a patient from a chair to a standing position and felt a pulling sensation within her low back associated with pain." [Doc. No. 7-7, at p. 8.] She then had surgery on October 27, 2010, which is described as follows in the treating orthopedic surgeon's report: "[A]nterior cervical diskectomy with decompression of the spinal cord and nerve

---

[4] The Court notes that plaintiff argues in the Joint Motion that her disability claim was denied "merely because the documentation from 2005 did not contain specific objective medical evidence consisting of an MRI or other documentation to show conclusively that plaintiff [had] a disabling impairment during her insured period of June 30, 2005." [Doc. No. 10, at p. 6.] Clearly this is not the case, because the ALJ's conclusion was reached based on all of the pieces of evidence listed above.

roots at the C3-4, C4-5, and C5-6 levels with interbody fusions and anterior plate fixation." [Doc. No. 7-7, at pp. 4-5.] In his report dated July 8, 2011, this treating orthopedic surgeon concluded plaintiff is precluded from performing "heavy work," and "is no longer capable of carrying out the full and regular duties of her former occupation." [Doc. No. 7-7, at pp. 9, 11.]

On January 28, 2013, plaintiff was in a minor motor vehicle accident. She was examined by her treating orthopedic surgeon who concluded based on x-rays that "the hardware [from her prior surgery] was fine." [Doc. No. 7-7, at pp. 13-14.] However, plaintiff had a neurosurgical consultation on April 11, 2013, because she was experiencing severe pain in her head, neck, upper back, lower back, shoulders, and knees and having difficulty with activities of daily living. [Doc. No. 7-1, at pp. 13-14.] The treating neurological surgeon concluded plaintiff's pain was related to the motor vehicle accident. Conservative treatment was recommended. [Doc. No. 7-7, at p. 16.] Thereafter, the record indicates plaintiff was being treated for chronic pain. [*See, e.g.*, Doc. No. 7-7, at pp. 19-71.]

On June 26, 2017, plaintiff expressed frustration "regarding her pain management plan." [Doc. No. 7-12, at p. 123.] She was having pain "every day despite her current medications." [Doc. No. 7-12, at p. 123.]

On November 1, 2017, plaintiff had another surgical intervention, a lumbar laminectomy with discectomy (bilateral), after conservative treatment for spinal stenosis and pain were not effective. [Doc. No. 7-10, at p. 14.] A post-operative MRI was completed on December 5, 2017 showing "[e]xtensive postoperative changes C3-C6." [Doc. No. 7-12, at p. 111.] At this time, alignment was "considered normal." [Doc. No. 7-12, at p. 113.] Other notations indicate there was mild diffuse spinal stenosis without cord compression at C3-4 through C6-7; minimal posterior disc bulge with no spinal stenosis at C2-3; no spinal stenosis at C3-4; mild spinal stenosis without cord compression at C4-5; no significant spinal stenosis at C5-6; no central spinal stenosis at C6-7 but mild neural foraminal narrowing was noted bilaterally; and mild posterior disc

bulge with mild spinal stenosis at C7-T1. Neural foramina were clear at C2-3 through C5-6. [Doc. No. 7-12, at p. 113.]

## IV. *Discussion.*

Plaintiff argues the ALJ erroneously determined that her medical records do not show she was permanently disabled prior to the expiration of her date last insured. [Doc. No. 10, at pp. 5-7.] In plaintiff's view, "the totality of the circumstances" establish that she "was in fact disabled on June 30, 2005," so she is entitled to disability benefits. [Doc. No. 10, at p. 7.] Essentially, plaintiff's argument is that the ALJ should have viewed her available medical records in a light more favorable to her claim for disability benefits. [Doc. No. 10, at p. 7.] For example, plaintiff argues the medical records the ALJ relied on to reach his conclusion, together with her employment records, which allegedly indicate she "never worked a job more than minimal hours of part-time work since 2005," should have convinced the ALJ she was disabled as of her date last insured.

After a careful review, the Court finds plaintiff's view of the record unconvincing. The Administrative Record clearly shows plaintiff did not meet her burden of establishing she had a severe impairment as of her date last insured. It is also clear from the Administrative Record that the ALJ's non-disability determination is well-supported by substantial evidence. In this Court's view, it would have been untenable based on "the totality of circumstances" shown in the Administrative Record for the ALJ to infer plaintiff had a disabling impairment as of her date last insured.

In support of her contention that the ALJ erroneously determined she was not permanently disabled as of her date last insured, plaintiff refers the Court to the July 6, 1998 x-ray of her lumbar spine and the March 1, 2017 letter written by a physician who allegedly treated her in 2005. However, these documents are, at best, exceedingly weak evidence of a disabling condition in 2005. As the ALJ noted in his decision, the 1998 x-ray only indicates it is "possible" plaintiff had "minimal degenerative disc disease at C5-C6" in 1998. [Doc. No. 7-2, at p. 19, citing Ex. IF; Doc. No. 7-7, at p. 2.] The March 1, 2017 letter from a physician who allegedly treated plaintiff in 2005 only states plaintiff

"has a history of degenerative joint disease since 2005;" is "currently disabled;" has chronic back pain; and has had back surgeries. [Doc. No. 7-7, at p. 73.] It would not be reasonable to infer from this information that plaintiff had a severe impairment or disabling condition in 2005. The only reference in the letter to plaintiff's medical condition in 2005 is vague and ambiguous, and most of the letter speaks to plaintiff's medical condition in 2017, not 2005. In addition, as Dr. Lorber indicated in his testimony, the letter is weak evidence, because it "doesn't even have a signature. It looks like someone printed his name here." [Doc. No. 7-2, at p. 44.]

The next two pieces of objective evidence in the Administrative Record that were referenced in the ALJ's decision are the x-rays from September 23, 2013 and an MRI from March 16, 2017, and these pieces of evidence do not support plaintiff's contention she had a disabling condition in 2005. In fact, these pieces of objective evidence contradict plaintiff's contention she had a disabling condition in 2005. Therefore, without more, it would be non-sensical for the ALJ to conclude plaintiff was disabled in 2005 based on exceedingly week evidence from 1998 and 2017, together with contradictory evidence from 2013 and 2017.

Plaintiff's "totality of the circumstances" argument also relies on the July 6, 1998 x-ray and the May 16, 2017 handwritten physician's letter, together with allegedly "irrefutable evidence" plaintiff was "disabled as early as 2009" and employment records "since 2005." [Doc. No. 10, at p. 7.] In this regard, plaintiff believes a disabling condition "since 2005" can be inferred from her employment records, because they show only "part-time work" and "minimal hours." [Doc. No. 10, at p. 7.] Viewing all this evidence together, plaintiff argues that the ALJ should have concluded she was in fact disabled as of her date last insured, June 30, 2005. [Doc. No. 10, at p. 7.]

As noted above, the July 6, 1998 x-ray and the May 16, 2017 handwritten physician's letter are, at best, exceedingly weak evidence of a disabling condition in 2005. Plaintiff does not reference, and the Court was unable to locate, any "irrefutable evidence" that plaintiff was "disabled as early as 2009." [Doc. No. 10, at p. 7.] Nor

could a disabling condition in 2005 be inferred from employment records showing part-time work and minimal hours "since 2005." [Doc. No. 10, at p. 7.] There are many reasons one might work part-time. Although it is possible someone might work part time because of a condition that would be considered disabling under Social Security regulations, it would not be reasonable to make such an inference on employment records alone or on employment records plus exceedingly weak and/or non-existent evidence. Therefore, plaintiff's "totality of the circumstances" argument is wholly unconvincing. The ALJ's non-disability determination as of the date last insured is based on and supported by substantial evidence from the Administrative Record, so the Court finds that plaintiff's request for a reversal and remand must be denied.

## *Conclusion*

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's non-disability determination as of the date last insured. Accordingly,

IT IS HEREBY ORDERED that plaintiff's request for a reversal and remand is DENIED. [Doc. No. 10.]

IT IS FURTHER ORDERED that the final decision of the Commissioner of Social Security is AFFIRMED. The Clerk of the Court is directed to enter judgment accordingly in favor of defendant and against plaintiff and to terminate the case.

IT IS SO ORDERED.

Dated: January 14, 2022

Hon. Karen S. Crawford
United States Magistrate Judge